**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/18/16
```

------------------------------------------------------X

**BG LITIGATION RECOVERY I, LLC,**

        **Plaintiff,**

   - against -

**BARRICK GOLD CORPORATION,
AARON REGENT, JAMIE SOKALSKY,
PETER KINVER, IGOR GONZALES,
GEORGE POTTER, and SYBIL
VEENMAN,**

        **Defendants.**

------------------------------------------------------X

**HIGHFIELDS CAPITAL I LP,
HIGHFIELDS CAPITAL II LP, and
HIGHFIELDS CAPITAL III LP,**

        **Plaintiffs,**

   - against -

**BARRICK GOLD CORPORATION,
AARON REGENT, JAMIE SOKALSKY,
AMMAR AL-JOUNDI, PETER KINVER,
IGOR GONZALES, GEORGE POTTER,
and SYBIL VEENMAN,**

        **Defendants.**

------------------------------------------------------

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**OPINION AND ORDER**

**15 Civ. 8457 (SAS)
15 Civ. 8465 (SAS)**

1

## I.   INTRODUCTION

These suits — respectively brought in October 2015 by Highfields Capital I LP, Highfields Capital II LP, and Highfields Capital III LP (collectively, "Highfields") and BG Litigation Recovery I, LLC ("BG") (together, with Highfields, "plaintiffs") against Barrick Gold Corporation ("Barrick"), Aaron Regent, Jamie Sokalsky, Ammar Al-Joundi, Peter Kinver, Igor Gonzales, George Potter, and Sybil Veenman (the "Individual Defendants") (with Barrick, "defendants")[1] — were initiated by plaintiffs who opted out of a class action already pending before this Court.[2]

The plaintiffs in these suits are either purchasers, or assignees of purchasers, of Barrick common stock.  The Highfields plaintiffs purchased Barrick common stock on various dates between April 11, 2013 and September 20, 2013.[3] Each of BG's members was a purchaser of Barrick common stock who, pursuant to BG's Operating Agreement, assigned their claims against defendants to BG prior

---

[1]   Al-Joundi is named as a defendant in the Highfields Complaint ("HF Compl.") but not the BG Complaint ("BG Compl.").

[2]   *See In re Barrick Gold Secs. Litig.*, No. 13 Civ. 3851 (S.D.N.Y.).

[3]   *See* HF Compl. ¶ 20; List of Highfields Purchase Dates, Ex. A to HF Compl.

to the initiation of BG's suit.[4]  The BG assignors had all liquidated their positions

in BG common stock by June 4, 2013.[5]

      Like the class action plaintiffs, Highfields' and BG's claims are based

on alleged misstatements relating to Barrick's now-halted development of Pascua-

Lama, a large gold mine spanning the border between Chile and Argentina (the

"Project").  Also like the class, Highfields and BG assert securities fraud claims

against certain defendants pursuant to Section 10(b) of the Securities Exchange Act

of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and control

person claims against certain defendants pursuant to Section 20(a) of the Exchange

Act.

      In the class action, in April 2015, the Court granted in part and denied

in part defendants' motion to dismiss (the "April 2015 Class Action Opinion").[6]  In

doing so, the Court dismissed one category of defendants' alleged misstatements

(cost and scheduling estimates), but allowed litigation to proceed with respect to

the following three categories of allegations:  (1) statements regarding compliance

with environmental regulations; (2) statements regarding internal controls and

---

[4]     *See* BG Compl. ¶¶ 19-27.

[5]     *See id.* ¶ 176.

[6]     *See In re Barrick Gold Secs. Litig.*, No. 13 Civ. 3851, 2015 WL
1514597 (S.D.N.Y. Apr. 1, 2015).

3

accounting for capital costs; and (3) statements concerning accounting for the Project.[7]  In March 2016, the Court granted plaintiffs' motion for class certification.[8]

Defendants now move to dismiss the Highfields and BG Complaints pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, as well as Section 78u-4 of Title 15 of the United States Code.[9]  For the following reasons, defendants' motion is GRANTED in part and DENIED in part.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor."[10]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the

---

[7]     *See id.*  In June 2015, the Court denied defendants' motions for reconsideration and interlocutory appeal of that decision.  *See In re Barrick Gold Secs. Litig.*, No. 13 Civ. 3851, 2015 WL 3486045 (S.D.N.Y. June 2, 2015).

[8]     *See In re Barrick Gold Secs. Litig.*, No. 13 Civ. 3851, 2016 WL 1213238 (S.D.N.Y. Mar. 23, 2016).

[9]     The motion to dismiss briefing, including plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaints ("Pl. Mem."), addresses the Highfields and BG Complaints together.

[10]    *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

Supreme Court in *Ashcroft v. Iqbal*.[11]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[12]  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[13]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[14]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[16]

Further, [t]he court may consider "the complaint, . . . any documents attached thereto or incorporated by reference and documents upon which the

---

[11]      *See* 556 U.S. 662, 678-79 (2009).

[12]      *Id*. at 679.

[13]      *Id*. at 678 (citation omitted).

[14]      *Id*. at 679.

[15]      *Id*. at 678 (citation omitted).

[16]      *Id*. (quotation marks and citations omitted).

complaint relies heavily,"[17] as well as "legally required public disclosure

documents filed with the SEC[] . . . ."[18]

**B.    Heightened Pleading Standard Under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA")**

Private securities fraud claims are subject to a heightened pleading

standard.  *First*, Rule 9(b) requires plaintiffs to allege the circumstances

constituting fraud with particularity.  However, "[m]alice, intent, knowledge, and

other conditions of a person's mind may be alleged generally."[19]  *Second*, the

PSLRA provides that, in actions alleging securities fraud, "the complaint shall,

with respect to each act or omission alleged to violate this chapter, state with

particularity facts giving rise to a strong inference that the defendant acted with the

required state of mind."[20]

**C.    Leave to Amend**

Rule 15(a)(2) provides that, other than amendments as a matter of

course, "a party may amend [its pleading] only by leave of court or by written

---

[17]    *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (quotation marks omitted).

[18]    *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).

[19]    Fed. R. Civ. P. 9(b).

[20]    15 U.S.C. § 74u-4(b)(2).

consent of the adverse party."[21]  Although "[t]he Court should freely give leave

when justice so requires,"[22] it is "within the sound discretion of the district court to

grant or deny leave to amend."[23]  When a motion to dismiss is granted, "'[i]t is the

usual practice . . . to allow leave to replead.'"[24] Where a plaintiff inadequately

pleads a claim and cannot offer additional substantive information to cure the

deficient pleading, granting leave to amend is futile and should be denied.[25]

## III.   APPLICABLE LAW

### A.   Section 10(b) of the Exchange Act and Rule 10b-5

Section 10(b) of the Exchange Act prohibits using or employing, "in

connection with the purchase or sale of any security . . . any manipulative or

deceptive device or contrivance. . . ."[26]  Rule 10b-5, promulgated thereunder,

makes it illegal to "make any untrue statement of a material fact or to omit to state

---

[21]      *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[22]      Fed. R. Civ. P. 15(a)(2).

[23]      *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

[24]      *Heckman v. Town of Hempstead*, 568 Fed. App'x 41, 43 (2d Cir. 2014) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[25]      *See Smith v. United States*, 554 Fed. App'x 30, 32 (2d Cir. 2013).

[26]      15 U.S.C. § 78j(b).

a material fact . . . in connection with the purchase or sale of any security."[27]  To

sustain a claim for securities fraud under Section 10(b), "a plaintiff must prove (1)

a material misrepresentation or omission by the defendant; (2) scienter; (3) a

connection between the misrepresentation or omission and the purchase or sale of a

security; (4) reliance upon the misrepresentation or omission; (5) economic loss;

and (6) loss causation."[28]

### 1.    Material Misstatements or Omissions

In order to satisfactorily allege misstatements or omissions of material

fact, a complaint must "state with particularity the specific facts in support of

[plaintiffs'] belief that [defendants'] statements were false when made."[29]  "[A]

fact is to be considered material if there is a substantial likelihood that a reasonable

person would consider it important in deciding whether to buy or sell [securities] . .

. ."[30]  Mere "allegations that defendants should have anticipated future events and

made certain disclosures earlier than they actually did do not suffice to make out a

---

[27]        17 C.F.R. § 240.10b-5.

[28]        *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S.
148, 157 (2008).

[29]        *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (quotation
marks omitted).

[30]        *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt.
LLC*, 595 F.3d 86, 92-93 (2d Cir. 2010) (quotation marks omitted).

claim of securities fraud."[31]

### 2.    Scienter

The required level of scienter under Section 10(b) is either "intent to deceive, manipulate, or defraud"[32] or "reckless disregard for the truth."[33]  Plaintiffs may meet this standard by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."[34]  Under the latter theory, plaintiffs must allege that the defendants have engaged in "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."[35] "[S]ecurities fraud claims typically have sufficed to state a claim based on

---

[31]     *Id.  Accord Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000).

[32]     *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).

[33]     *South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) ("By reckless disregard for the truth, we mean 'conscious recklessness — *i.e.*, a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*.'" (emphasis in original) (quoting *Novak v. Kasaks,* 216 F.3d 300, 308 (2d Cir. 2000)).

[34]     *ATSI*, 493 F.3d at 99 (citing *Ganino v. Citizens United Co.*, 228 F.3d 154, 168-69 (2d Cir. 2000)).

[35]     *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (quotation marks and citations omitted).

recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements.  Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation."[36]  An inference of scienter "must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."[37]

### 3.    Loss Causation

A securities fraud plaintiff is required to "prove both transaction causation (also known as reliance) and loss causation."[38]  Loss causation is "the proximate causal link between the alleged misconduct and the plaintiff's economic harm."[39]  "A misrepresentation is 'the proximate cause of an investment loss if the

---

[36]        *Novak,* 216 F.3d at 308.

[37]        *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007).  *Accord Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 295 (S.D.N.Y. 2011) (noting that "the tie . . . goes to the plaintiff" (quotation marks and citations omitted)).

[38]        *ATSI*, 493 F.3d at 106.  Defendants do not dispute transaction causation.

[39]        *Id.* at 106-07 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005)).  *Accord Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007).

risk that caused the loss was within the zone of risk *concealed* by the misrepresentations . . . .'"[40]  Therefore, "to plead loss causation, the complaint[] must allege facts that support an inference that [defendant's] misstatements and omissions concealed the circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud."[41]

### B.    Section 20(a) of the Exchange Act

Section 20(a) of the Exchange Act ("Section 20(a)") creates a cause of action against "control persons" of the primary violation.[42]  "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."[43]  Where there is no primary violation, there can be no control person liability under Section 20(a).[44]

---

[40]    *In re Omnicom Grp., Inc. Secs. Litig.*, 597 F.3d 501, 513 (2d Cir. 2010) (quoting *Lentell*, 396 F.3d at 173) (emphasis in original).

[41]    *Lentell*, 396 F.3d at 175.

[42]    *See* 15 U.S.C. § 78t(a).

[43]    *ATSI*, 493 F.3d at 108.

[44]    *See id.  See also In re eSpeed, Inc. Secs. Litig.*, 457 F. Supp. 2d 266, 297-98 (S.D.N.Y. 2006).

## IV.   DISCUSSION[45]

Following the April 2015 Class Action Opinion, which held that certain statements relating to cost and scheduling estimates were not actionable, Highlands and BG allege only three categories of misstatements:  (1) statements regarding environmental compliance; (2) statements regarding internal controls; (3) and statements regarding accounting for the Project.  Plaintiffs maintain that their allegations "against Defendants [are] based on the same misrepresentations that the Court has already upheld as actionable in its prior decisions."[46]  Defendants reject this characterization, and offer three main arguments in support of their motion to dismiss the Highfields and BG Complaints.[47]  *First*, defendants argue that plaintiffs have failed to state a Section 10(b) claim with respect to any category of alleged misstatement.  *Second*, defendants assert that plaintiffs have failed to adequately plead control person liability under Section 20(a).  *Third*, defendants maintain that BG, as an assignee, lacks standing to pursue its claims.  I

---

[45]     Given the extensive procedural history of the related class action, which involves claims arising out of the same events and against the same defendants, familiarity with the general factual background outlined in prior rulings is presumed.  This Section incorporates additional facts, drawn from the Highfields and BG Complaints, as applicable.

[46]     Pl. Mem. at 1.

[47]     As discussed herein, certain of defendants' arguments relate only to one of the two Complaints.

address each argument in turn, although much of defendants' briefing rehashes

arguments that I have previously considered and rejected in the class action.

### A.      Section 10(b) Claims

#### 1.      Statements Regarding Environmental Compliance

##### a.       Material Misstatements

Defendants first contend that plaintiffs have failed to allege any facts

supporting their claim that Barrick's statements regarding compliance with its

Chilean environmental obligations were false or misleading when made.  I disagree

for substantially the same reasons as stated in the April 2015 Class Action

Opinion.   As an initial matter, there is no dispute that such statements are

material.[48]  Moreover, plaintiffs have alleged sufficient facts to indicate that

defendants made false or misleading statements regarding environmental

compliance — most of which were either implicitly or explicitly addressed by the

April 2015 Class Action Opinion.[49]  In that Opinion, the Court found that Barrick's

statements were false or misleading because plaintiffs had alleged, *inter alia*, that

defendants "knew that Barrick was violating its environmental commitments as

---

[48]      *See Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 252 (2d
Cir. 2014) ("[A] reasonable investor could conclude that a substantial non-
compliance would constitute a substantial threat to earnings.").

[49]      *See In re Barrick Gold*, 2015 WL 1514597.

early as April 2010," disregarded their environmental obligations including the requirement that they keep the roads near the Project wet to prevent dust from accumulating on nearby glaciers, and were fined on multiple occasions as a result of its non-compliance.[50]  Highfields and BG have similarly met their pleading burdens here.

Nevertheless, defendants offer a number of arguments in support of their position.  Nearly all of these arguments fail.  *First*, defendants point to the fact that Barrick's SEC filings "cautioned [that] '[t]here can be no assurance that Barrick has been or will at all times be in full compliance with . . . its environmental . . . permits.'"[51]  This is a red herring, as any disclaimers issued by Barrick are irrelevant to the issue of whether *other* statements by Barrick were false or misleading when made.

*Second*, defendants suggest that Regent's representations on the October 28, 2010 conference call relate only to newly-enacted Argentinian legislation (and not the Chilean permits at issue in this case).  However, viewed in context, it is reasonably understood that Regent was referring to all of Barrick's

---

[50]     *Id.* at *11.

[51]     Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs. Mem.") at 7 (quoting three SEC Form 40-F filings by Barrick, Exs. 2-4 to Declaration of Elliot Greenfield in Support of Defendants' Motion to Dismiss ("Greenfield Decl.")).

environmental obligations and compliance efforts — in Argentina and elsewhere — when he stated that "Barrick has *always been* supportive of legislation and measures to protect glaciers, and that . . . the Pascua-Lama project . . . [is] not impacting the glaciers surrounding our operations" (which spanned both Chilean and Argentinean territories).[52]  Moreover, this statement is false or misleading as it is contradicted by plaintiffs' allegations that as early as November 2009, Chilean authorities notified Barrick that it was in violation of its obligations to prevent dust accumulation on glaciers, and after several years of ongoing non-compliance, finally imposed a fine on Barrick in February 2011 for this and other violations.[53]

*Third*, defendants attempt to characterize Barrick's 2010 and 2011 Responsibility Reports as neither false nor misleading on the basis that these documents promise only to "identify deficiencies."[54]  However, the Responsibility Reports are retrospective summaries of the prior calendar year, to be used in

---

[52]     HF Compl. ¶ 173 (emphasis added); BG Compl. ¶ 187 (emphasis added).

[53]     *See* HF Compl. ¶¶ 116-117; BG Compl. ¶¶ 118-119.   Four additional fines were levied against Barrick between March 19, 2012 and April 5, 2013.  *See* HF Compl. ¶ 127; BG Compl. ¶ 129.

[54]     Defs. Mem. at 10 (quoting HF Compl. ¶ 174; BG Compl. ¶ 188).

15

assessing future investment decisions.[55]  Within these Reports, Barrick indicated

that it had undertaken environmental audits to ensure its compliance with

governmental regulations, and that it had implemented corrective or preventive

measures to address identified deficiencies[56] — a representation that is belied by

the environmental fines repeatedly imposed on Barrick.[57]  Defendants also suggest

that the Responsibility Reports are not misleading because they included

paragraphs entitled, "Fines for Environmental Non-Compliance."[58]  This argument

is plainly unavailing given that these paragraphs simply totaled the number and

amount of all fines issued against Barrick, which has mining operations worldwide,

and did not indicate which of those fines, if any, related to the Project at issue in

this case.[59]

---

[55]     *See* HF Compl. ¶¶ 63-67; BG Compl. ¶¶ 188-190.  *See also* Excerpts
from Barrick's 2010 and 2011 Responsibility Reports, Ex. 12 to Greenfield Decl.

[56]     *See* HF Compl. ¶¶ 64-65; BG Compl. ¶¶ 188-189.

[57]     *See, e.g.*, HF Compl. ¶¶ 127, 174; BG Compl. ¶¶ 129, 188.

[58]     Excerpts from Barrick 2010 and 2011 Responsibility Reports at 3-4,
6.

[59]     *See id.*  Barrick also suggests that Barrick's environmental compliance
statements are not actionable because the Chilean fines levied against the company
were published on a Chilean government website.  Even assuming that such
information — which apparently was posted in Spanish — was available to
plaintiffs and other investors, it is inappropriate to consider it at this stage.  *See*
*Ganino*, 228 F.3d at 167 ("The truth-on-the-market defense is intensely fact
specific and is rarely an appropriate basis for dismissing a [Section] 10(b)

16

*Fourth*, defendants argue that Barrick's December 2011 special statement is not actionable because, *inter alia*, plaintiffs have alleged no facts indicating that Barrick's statement that it had "'implemented . . . requirements associated with glacier protection as mandated in the project's environmental approval'" was false when made.[60]  As already discussed, however, Barrick was in violation, as early as November 2009, of its obligations to prevent dust from degrading nearby glaciers (and was repeatedly fined for its non-compliance through 2013).

*Fifth*, defendants contend that plaintiffs allege no facts contradicting Sokalsky's April 24, 2013 statement, which included the representation that there had been "no adverse impact on water quality or glaciers."[61]  However, plaintiffs have specifically alleged that defendants had been repeatedly fined for violating their obligations regarding wastewater treatment, disposal of industrial waste, and mitigation of dust accumulation on glaciers.[62]

_____

complaint.").

[60]     Defs. Mem. at 10-11 (quoting HF Compl. ¶¶ 179-180; BG Compl. ¶¶ 193-194).

[61]     HF Compl. ¶ 75; BG Compl. ¶ 170.

[62]     *See, e.g.*, HF Compl. ¶¶ 120, 182, 184; BG Compl. ¶¶ 122, 187, 192. Defendants also cite a March 20, 2015 finding by a Chilean court determining that the Project had not, *inter alia*, damaged glaciers.  However, that decision — which

17

Finally, however, defendants correctly assert that their statement in numerous SEC Forms 6-K that the Project had been "undertaken pursuant to existing environmental approvals" and that Barrick "ha[d] a comprehensive range of measures in place to protect . . . [sensitive environmental] areas and resources" is not actionable because it relates to Argentinian legislation.[63]  As stated in the April 2015 Class Action Opinion, this representation does not relate to compliance with Chilean requirements and is thus irrelevant to this litigation.[64]  Although this statement is not actionable (wherever it appears),[65] plaintiffs have nevertheless adequately pleaded other material misstatements regarding defendants' compliance with Chilean environmental regulations.

### b.    Scienter

Plaintiffs may satisfy the scienter requirement by showing either

_____

post-dates the April 24, 2013 statement — falls outside of the pleadings and relates to the merits and thus, cannot be considered at this stage.  *See Building Indus.*, 678 F.3d at 187; *Ganino*, 228 F.3d at 167.

[63]    *See, e.g.*, HF Compl. ¶ 70; BG Compl. ¶ 74.

[64]    *See In re Barrick Gold*, 2015 WL 1514597, at *11 n.141.  *See also In re Barrick Gold*, 2015 WL 3486045, at *1.

[65]    Leave to amend with respect to this statement is denied on the basis that amendment would be futile.  *See Smith*, 554 Fed. App'x at 32.  Having held that his public statement is not actionable, re-pleading cannot cure this deficiency.

18

actual knowledge or recklessness,[66] and may meet this standard by alleging a plausible motive or strong circumstantial evidence.[67]  Here, plaintiffs do not attempt to satisfy the scienter requirement by establishing that defendants had a motive to make false statements regarding environmental compliance.  Instead, they present strong circumstantial evidence of scienter — namely that Barrick and the Individual Defendants had access to specific monthly project reports and other materials which contradicted their subsequent public statements regarding environmental compliance.[68]  Thus, for substantially the reasons stated in the April 2015 Class Action Opinion, I find that Highfields and BG have satisfied their burden regarding scienter.[69]

### c.    Loss Causation

Defendants' main argument against loss causation is predicated on

---

[66]    *See Ernst*, 425 U.S. at 193; *South Cherry*, 573 F.3d at 109.

[67]    *See ATSI*, 493 F.3d at 99.

[68]    *See* HF Compl. ¶¶ 119, 123, 128, 135-137; BG Compl. ¶¶ 121, 125, 130, 139.

[69]    *See In re Barrick Gold*, 2015 WL 1514597 at *11-*12.  To challenge scienter on the instant motion to dismiss, defendants make nearly identical arguments to those considered and rejected in the April 2015 Class Action Opinion.  Defendants' arguments regarding scienter are again considered and rejected here.

their position that plaintiffs have failed to allege any material misstatements with respect to environmental compliance — an argument that I have rejected for the reasons stated. Moreover, loss causation is satisfied because plaintiffs have alleged specific partial disclosure dates on which previously concealed risks materialized and Barrick's share price fell.[70]

The April 2015 Class Action Opinion held that plaintiffs had adequately pled loss causation on the basis of two such disclosure dates, pleaded both in the class action complaint and by the Highfields and BG plaintiffs:  April 10, 2013 (on which the media reported that a Chilean court had issued an injunction halting construction on Pascua-Lama) and May 24, 2013 (on which the media reported that Chile's Environmental Superintendent had issued a resolution suspending the Project pending compliance with an environmental permit, and imposed a fine of sixteen million dollars on Barrick).[71]  In the class action, defendants argued that the April 10, 2013 disclosure (after which Barrick's share price dropped approximately 8.4 percent) was not actionable because investors were already aware of the Chilean litigation and its attendant risks.  The April 2015 Class Action Opinion rejected that argument, explaining that:

---

[70]     *See* HF Compl. ¶¶ 153-164, 240; BG Compl. ¶¶ 166-175.

[71]     *See In re Barrick Gold*, 2015 WL 1514597, at *12.

> defendants' alleged misstatements regarding environmental compliance meant that investors could not adequately weigh th[e] risk [of the Chilean litigation]. . . . Had Barrick not made the alleged misstatements regarding environmental compliance, a reasonable investor may have taken the Chilean litigation and risk of suspension of the Project much more seriously.[72]

Likewise, as Highfields and BG have pleaded a series of disclosures which resulted in a materialization of previously concealed risks — including the April 10, 2013 and May 24, 2013 reports — defendants' argument that plaintiffs have failed to adequately plead loss causation also is rejected.[73]

### 2.    Statements Regarding Internal Controls

Defendants next contest the sufficiency of the pleadings as to alleged misstatements regarding internal controls.  However, plaintiffs' allegations concerning internal controls are based on largely the same allegations and documents that were evaluated and upheld in the April 2015 Class Action Opinion.[74]  Accordingly, for substantially the same reasons as stated in that

---

[72]    *Id.* at *13.

[73]    The parties agree that Highfields may only recover based on disclosures occurring after their purchase of Barrick common stock, all of which post-date the April 10, 2013 disclosure.  *See* Pl. Mem. at 15-16; Reply Memorandum of Law in Support of Defendants' Motion to Dismiss ("Reply") at 6. *See also* List of Highfields Purchase Dates.

[74]    *See* HF Compl. ¶¶ 140-147; BG Compl. ¶¶ 140-147; *In re Barrick Gold*, 2015 WL 1514597, at *13-15 (observing, *inter alia*, that "[t]he July 2011 Monthly Progress Report concluded that project reporting at Pascua-Lama suffered

Opinion,[75] I find that Highfields and BG have met their burden of stating a claim as to Barrick's statements concerning internal controls.

Defendants further contend that the Highfields plaintiffs did not and cannot plead loss causation because they acquired Barrick stock only after the April 10, 2013 disclosure date.  This argument fails, as Highfields alleges four disclosure dates, cited by the April 2015 Class Action Opinion, which all post-date some of Highfields' purchases.[76]

### 3.    Statements Regarding Accounting for the Project

Defendants also revisit their objection to the allegation that Barrick failed to timely record an impairment loss and properly evaluate the Project for impairment.  Again, however, defendants' refurbished opposition fails for essentially the same reasons provided in the April 2015 Class Action Opinion, which concluded — on the basis of similar allegations as those raised in the

---

from significant inaccuracies, omissions and inconsistencies in monthly reports; [c]ost [m]anagement [p]rocess weaknesses and inaccurate reporting; and [r]isk [m]anagement [p]rocess weaknesses contributing to inaccurate reporting" but that "Barrick stated [in SEC filings] that based on Barrick management's assessment, Barrick's internal control over financial reporting is effective") (internal quotation marks and citations omitted).

[75]    *See In re Barrick Gold*, 2015 WL 1514597, at *13-15.

[76]    *See* HF Compl. ¶¶ 227-239; List of Highfields Purchase Dates; *In re Barrick Gold*, 2015 WL 1514597, at *14.

Highfields and BG Complaints — that "[a]s defendants were obligated to analyze the impairment of an asset in the presence of potential indicators of impairment, the failure to assess an impairment before 2013 was an omission of a material fact."[77]

Additionally, defendants now argue that BG cannot meet its loss causation burden given that its assignors "liquidated their entire position in Barrick common stock by June 4, 2013,"[78] the date on which Barrick actually recorded its impairment loss for the Project.[79]  This argument fails, however, because at least some of the alleged disclosures relating to impairment occurred prior to the BG assignors' liquidation of their Barrick holdings.[80]

## B.    Control Person Liability Under Section 20(a)

I now turn to defendants' arguments regarding Section 20(a) liability. Defendants assert that plaintiffs have failed to allege a primary violation, actual control, or culpable participation.[81]  With respect to the primary violation

---

[77]    *In re Barrick Gold*, 2015 WL 1514597, at *15.  *Accord* HF Compl. ¶¶ 148-151, 215; BG Compl. ¶¶ 148-151, 218.

[78]    BG Compl. ¶ 176.

[79]    *See id.* ¶ 177.

[80]    *See id.* ¶¶ 153-175, 237.  *See also In re Barrick Gold*, 2015 WL 1514597, at *14-*15.

[81]    *See ATSI*, 493 F.3d at 108.

argument, however, I have already held that plaintiffs have stated a Section 10(b) claim.  As to actual control or culpable participation, defendants do not even attempt to suggest that their arguments deviate from those that were considered and rejected by the April 2015 Class Action Opinion.[82]  I continue to adhere to the position articulated in that Opinion,[83] and therefore conclude that Highfields and BG have adequately met their burden as to their Section 20(a) claims.[84]

### C.    Standing

Defendants also challenge BG's standing to bring suit altogether, arguing that the "assignment of claims [to BG] appears to have been made solely for the purposes of shielding the actual purchasers of Barrick stock . . . from their obligations under the Federal Rules of Civil Procedure and should be disregarded."[85]  In so arguing, defendants primarily rely on *In re BP p.l.c. Securities Litigation*, a case from the Southern District of Texas, in which the court deemed certain assignments at issue to be "sham assignments" and thereby

---

[82]    Reply at 8 ("Defendants respectfully disagree with the Court's holdings regarding the pleading requirements for actual control and culpable participation in its order on the motion to dismiss the Class Complaint.").

[83]    *See In re Barrick Gold*, 2015 WL 1514597, at *15-*16.

[84]    *See* HF Compl. ¶¶ 24-30, 119-137; BG Compl. ¶¶ 29-34, 121-139.

[85]    Defs. Mem. at 22.

dismissed the assignees for procedural and practical reasons.[86]

Plaintiffs do not dispute that the BG entity was created in order to aggregate purchasers' claims for prosecution.[87]  However, they correctly point out that defendants' reliance on *BP* overstates the weight of that authority.  The Supreme Court has explicitly approved the practice of assigning claims for litigation purposes on both Article III and prudential grounds, recognizing "the historical tradition of suits by assignees."[88]  Further, the Second Circuit and courts

---

[86]    MDL No. 10 MD 2185, 2016 WL 293600 (S.D. Tex. Jan. 4, 2016).

[87]    *See* Pl. Mem. at 21 ("The purpose of BG is to collectively prosecute the securities fraud claims against Defendants that each investment fund has assigned to BG.  The pooling of claims into a single entity promotes efficiency and reduces costs.").

[88]    *Sprint Commc'ns Co. LP v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008).  *Accord id.* at 291-92 ("Petitioners also point to various practical problems that could arise because the [assignees], rather than the [assignors], are suing.  In particular, they say that the [assignors] may not comply with discovery requests served on them, that the [assignors] may not honor judgments reached in this case, and that petitioners may not be able to bring, in this litigation, counterclaims against the [assignors].  Even assuming all that is so, courts have long permitted assignee lawsuits notwithstanding the fact that such problems could arise.  Regardless, courts are not helpless in the face of such problems.  For example, a district court can, if appropriate, compel a party to collect and to produce whatever discovery-related information is necessary. . . . We do not say that the litigation before us calls for the use of any such procedural device.  We mention them only to explain the lack of any obvious need for the remedy that the carriers here propose, namely, denial of standing.  Finally, we note that in this litigation, there has been no allegation that the assignments were made in bad faith.  We note, as well, that the assignments were made for ordinary business purposes.  Were this not so, additional prudential questions might perhaps arise.").

within this Circuit routinely permit assignees to bring securities fraud suits based on claims that have been assigned to them.[89]

In fact, defendants themselves concede that "courts 'may permit a party with standing to assign its claims to a third party'"[90] but nevertheless argue that "prudential considerations" should persuade the Court to dismiss the BG Complaint for lack of standing.[91]  Under the relevant precedent and circumstances of this case, however, I decline defendants' invitation.  In particular, there is no evidence that BG or its assignors have avoided, or intend to avoid, their litigation obligations — under the Federal Rules of Civil Procedure or otherwise.  In evaluating this precise concern, the Supreme Court has observed that "courts are

---

[89]    *See, e.g.*, *Advanced Magnetics, Inc. v. Bayfront Partners,* Inc., 106 F.3d 11, 17 (2d Cir. 1997); *In re Petrobras Secs. Litig.*, No. 14 Civ. 9662, 2015 WL 9266983 (S.D.N.Y. Dec. 20, 2015).  *See also W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008)) (observing that "an assignment of claims transfer legal title or ownership of those claims and thus fulfills the constitutional requirement of 'injury-in-fact'" and holding that, by contrast, mere power-of-attorney is insufficient to confer standing (citing *Advanced Magnetics*, 106 F.3d at 17-18)); *In re Vivendi Universal, S.A. Secs. Litig.*, 605 F. Supp. 2d 570, 575 (S.D.N.Y. 2009) ("The fact that plaintiffs are not the beneficial owners of the securities does not necessarily mean they lack standing to pursue their claims.  Should the evidence show that plaintiffs own the claims by virtue of an assignment, there would be little doubt that they have standing.") (emphasis and citation omitted).

[90]    Defs. Mem. at 9 (emphasis omitted) (citing *W.R. Huff*, 549 F.3d at 107).

[91]    *Id.* (discussing *Sprint*, 554 U.S. at 292).

26

not helpless in the face of such problems.  For example, a district court can, if appropriate, compel a party to collect and to produce whatever discovery-related information is necessary."[92]

Further, proceeding under the BG umbrella has at least one legitimate business purpose:  that of "promot[ing] efficiency and reduc[ing] costs."[93] Defendants' mere contention that plaintiffs are acting in bad faith — unsupported by anything other than the observation that BG's claims have been assigned — is insufficient to support dismissal on this basis.  Accordingly, defendants' argument that BG lacks standing is rejected.

## V.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED with respect to the statement relating to the Argentinian legislation described herein and DENIED in all other respects.  Leave to amend is denied on the basis that amendment could not correct the identified deficiency in the statement for which defendants' motion to dismiss is granted.  The Clerk of the

---

[92]      *Sprint*, 554 U.S. at 292.

[93]      Pl. Mem. at 21.  *Cf. BP*, 2016 WL 293600, at *7 (discussing *Sprint*, 554 U.S. 269, and observing that "[t]here is even some suggestion in *Sprint* that pursuing [individual] claims was otherwise cost prohibitive for many [assignors]. The existence of this strong business-related justification for the [*Sprint*] assignments suggests that they were made for 'ordinary business purposes,' not as a sham.").

Court is directed to close this motion (Dkt. No. 32 in 15 Civ. 8457 and Dkt. No. 35

in 15 Civ. 8465).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           April 18, 2016

28

**- Appearances -**

**For Highfields and BG Plaintiffs**:

Lawrence M. Rolnick, Esq.
Marc B. Kramer, Esq.
Michael J. Hampson, Esq.
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
(973) 422-6764

**For Defendants**:

Jonathan R. Tuttle, Esq.
Ada Fernandez Johnson, Esq.
Bruce E. Yannett, Esq.
Elliott Greenfield, Esq.
Debevoise and Plimpton LLP
919 Third Avenue, 31st Floor
New York, NY 10022
(212) 909-6000